The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>     v.<br><br>CHRISTIN GUILLORY,<br><br>                        Defendant. | No. CR23-CR077RSM<br><br>**SENTENCING MEMORANDUM** |

## I.     INTRODUCTION

Defendant Christin Guillory is to be sentenced for embezzling more than $2.5 million from her employer and then failing to report the $2.5 million in ill-gotten gains on her tax returns. These offenses are very serious: they caused substantial losses; they spanned approximately nine years; and the embezzlement involved over 800 fraudulent transactions. The need for general deterrence, to promote respect for the law, and to impose just punishment all require a substantial prison sentence.

At the same time, the offense conduct is mitigated by defendant's personal circumstances. Defendant endured very serious childhood trauma, which appears to explain the drug addiction that motivated her to embezzle millions of dollars. Taking all of these factors into consideration, the government recommends a 36-month sentence.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.     OFFENSE CONDUCT

**A.     Guillory's Embezzlement from Victim Company**

Defendant Christin Guillory is the former Accounting Manager for an Everett-based manufacturing company (Victim Company). PSR ⁋ 8. Guillory's duties included, among other things, paying invoices for Victim Company's business expenses and recording those transactions in Victim Company's accounting system. *Id.*

Beginning no later than 2014, Guillory abused her position to embezzle millions of dollars of corporate funds from Victim Company. To facilitate the fraud, Guillory opened an account with Square, a payment processor. PSR ⁋ 9. Guillory assigned a display name to the Square account that made it appear the account was associated with a shipping company. *Id.* Because Victim Company regularly contracted with shipping companies, Guillory knew that payments to a shipping company would seem routine. Between 2014 and 2019, Guillory secretly paid out nearly $1.7 million of Victim Company's corporate funds to the Square account. *Id.* Guillory then transferred the stolen money from the Square account to her own bank accounts. *Id.* ⁋ 9. Guillory used the funds for her own purposes, a large part of which was funding her prescription drug addiction. *Id.* ⁋ 66.

Guillory concealed her fraud by manipulating and falsifying Victim Company's internal records. *Id.* ⁋ 10 She created fraudulent accounting entries that made it appear the payments were for legitimate business purposes. *Id.* She also re-used legitimate invoices as support for her fraudulent transactions. *Id.*

In April 2015, Square's compliance group identified anomalies associated with Guillory's Square account and requested information from Guillory. *Id.* ⁋ 11. Guillory falsely told Square she operated her own business. *Id.* Guillory prepared and provided Square with a fraudulent invoice to support her false statements. *Id.* While this initially satisfied Square, Square eventually closed the account in December 2019 based on anomalous transactions. *Id.*

*United States v. Guillory*, CR23-0077RSM
Sentencing Memorandum - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In January 2020, following the closure of the Square account, Guillory opened two PayPal accounts to carry on her fraud. *Id.* ¶ 12. Guillory opened one of the accounts in the name of Victim Company, and another in the name of a different shipping company. *Id.* In 2020 and 2021, Guillory secretly caused Victim Company to transfer a total of approximately $600,000 to the PayPal accounts. *Id.* ¶ 13. She then transferred most of these funds to her own bank account. *Id.* Again, Guillory created fraudulent accounting entries and invoices that made it appear the payments were made for legitimate business purposes. *Id.*

Finally, in August 2021, Guillory became even more brazen, and began transferring Victim Company's funds directly from Victim Company to her own bank account. *Id.* ¶ 14. Guillory transferred approximately $250,000 to herself in this way. *Id.*

In all, Guillory, secretly executed at least 867 transactions that together transferred a total of $2,536,086.17 in corporate funds to herself between 2014 and 2022. *Id* ¶ 15.

## B.    Guillory's Fraudulent Tax Returns

Guillory filed sworn tax returns for the years 2014 through 2020. The $2.5 million Guillory paid herself over that period was taxable income that she used for her own purposes. PSR ¶ 16. However, Guillory omitted all of that income from her tax returns. *Id.* ¶ 16. Accordingly, for each of the years 2014 through 2020, Guillory willfully filed false tax returns under penalty of perjury.

As one example, Guillory claimed $38,022 in income on her 2019 tax return. *Id.* ¶ 17. In fact, she had collected an additional $615,392—more than 16 times her claimed income—from her embezzlement scheme. *Id.* Guillory's failure to accurately report her income resulted in a total of an additional $590,850 in tax due and owing. *Id.*

## C.    The Criminal Charges

Agents executed a search warrant at Guillory's residence in February 2022. The agents did not find evidence that Guillory was living a particularly lavish lifestyle, and there were no particularly high-value assets or significant amounts of cash on the

*United States v. Guillory*, CR23-0077RSM
Sentencing Memorandum - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

premises. On May 11, 2023, Guillory entered pre-indictment guilty pleas to one count of wire fraud and one count of filing a false tax return.

### III.    SENTENCING GUIDELINES

The government agrees with the guideline calculation set out in the Presentence Report, which is as follows:

**Wire Fraud Calculation**

| Item | Guideline | Adjustment |
|------|-----------|------------|
| Base offense level | 2B1.1(a)(1) | 7 |
| Intended loss in excess of $1,500,000 | 2B1.1(b)(1)(I) | 16 |
| Abuse of Trust | 3B1.3 | 2 |
| Total | | 25 |

**Tax Fraud Calculation**

| Item | Guideline | Adjustment |
|------|-----------|------------|
| Base offense level with tax loss in excess of 550K | 2T1.1 and 2T4.1H | 20 |
| Failure to report criminal proceeds | 2T1.1(b)(1) | 2 |
| Total | | 22 |

Under 3D1.4 there are two offense units, increasing the base offense level from 25 to 27. After acceptance, Guillory's offense level is 24, resulting in a guideline range of **51-63** months.

As noted in the Amended Presentence Report, Guillory may qualify as a Zero-Point Offender under USSG § 4C1.1, which is scheduled to take effect on November 1. Amended PSR ¶ 104. This would result in a two-point reduction under the amended guidelines. The government does not object to the Court applying a 2-point downward variance in light of that prospective amendment. Application of that variance would result in a range of **41-50** months.

*United States v. Guillory*, CR23-0077RSM
Sentencing Memorandum - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV.    RATIONALE FOR SENTENCING RECOMMENDATION

The United States recommends that the Court sentence Guillory to 36 months of imprisonment. This sentence is necessary to satisfy the goals of Title 18, United States Code, Section 3553(a) for the following reasons:

### A.    Nature and Circumstances of the Offense

This offense is aggravated in several respects. First, the offense is substantial in size, duration, and scope. Guillory stole over $2.5 million, or an average of about $275,000 per year, for nine years. She executed 867 fraudulent transactions—every one of which was a separate criminal act. On top of that, Guillory repeatedly prepared fraudulent accounting entries and invoices, and submitted fraudulent information to Square's fraud department.

Second, the offense is aggravated because the defendant abused a position of trust. As Guillory well knew, Victim Company and its management and employees entrusted her with access to its corporate funds. In particular, Guillory had a longstanding and close friendship with the president of Victim Company. PSR ¶ 20. Guillory worked closely with him and other colleagues each day for years. The whole time, Guillory knew she was secretly stealing, placing company's financial security—and her colleagues' jobs—at risk. This breach of personal trust is a significant aggravating factor.

Third, Guillory's offense is aggravated by the significant scale of her tax fraud. After stealing millions of dollars from her employer, she lied to the IRS by wildly understating her income. For the tax return charged in Count 2, for example, Guillory claimed less than $40,000 in income, when in fact she had received over $650,000. Guillory repeated this offense for *seven* different tax returns.

### B.    Defendant's History and Characteristics

Guillory's history and characteristics are a significant mitigating factor. Defendant scores a 10 (the top end) of the Adverse Child Experiences scale. PSR ¶ 75. Her childhood included exposure to violence and other traumatic abuse that is detailed in the Presentence Report. And importantly, there appears to be a close relationship between

*United States v. Guillory*, CR23-0077RSM
Sentencing Memorandum - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

those experiences and the offense conduct. Defendant began abusing prescription drugs as a teenager, apparently as a means of coping with her trauma. Her substance abuse developed to the point where, according to Guillory, she was spending nearly $2,000 per day on prescription drugs during the offense period. While Guillory has six prior convictions, including two for theft and two for drug possession, all appear to be connected to Guillory's drug addiction.

Guillory's drug use does not by any means excuse her long-running fraud. She had the mental capacity and control to handle her day-to-day work responsibilities on a sustained basis—not to mention the wherewithal to execute and conceal 867 fraudulent transactions. Nonetheless, the fact that this crime was primarily motivated by addiction, not greed, separates this case from many financial crimes. For this reason, the government is recommending a below-guideline sentence.

**C.    Other Sentencing Factors**

General deterrence is a significant consideration here. Countless businesses rely on accounting and bookkeeping professionals like Guillory to manage their corporate funds. As this case shows, a person willing to breach that trust can do tremendous financial damage, while enriching themselves. A 36-month sentence is necessary to persuade would-be embezzlers that penalties for large-scale financial fraud outweigh its short-term financial gains.

The sentence must also protect the public from further crimes of the defendant. Guillory poses a significant risk of re-offense because she is still addicted to drugs. As discussed above, the instant offense was motivated by a longstanding drug addiction. So long as Guillory is using drugs, she presents a risk of re-offense. Unfortunately, defendant has not yet been able to make substantial progress toward breaking her addiction, and has continued to use drugs while on pretrial supervision. A 36-month sentence will protect the community from further crimes while defendant is incarcerated, and will provide a substantial period of enforced sobriety that may help Guillory toward recovery.

*United States v. Guillory*, CR23-0077RSM
Sentencing Memorandum - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**D.    A 36-Month Sentence is Consistent with Sentences Imposed in Other Cases.**

Other defendants have received longer sentences for embezzling similar, or even lower, amounts of money from their employers. *United States v. Smith*, CR19-00107RSL (51-month sentence where project manager embezzled approximately $1.5 million from ship construction company in connection with Coast Guard contract; defendant obstructed justice by lying to FBI agents); *United States v. Andersson*, CR16-128JLR (46-month sentence where accounting manager embezzled about $2.3 million from a freight management company); *United States v. Tran,* CR18-249RSM (28-month sentence where Microsoft project manager embezzled $1 million, and attempted to embezzle an additional $670,000, but returned all of the money before being charged). However, none of those defendants experienced the type of trauma or attendant drug addiction that is detailed in Guillory's Presentence Report. Because Guillory's conduct is explained at least in part by these factors, a 36-month sentence is proportionate to the cited cases.

## V.    CONCLUSION

The government respectfully recommends that the Court sentence defendant to 36 months of imprisonment.

Dated: August 17, 2023

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Seth Wilkinson*
SETH WILKINSON
Assistant United States Attorney

*United States v. Guillory*, CR23-0077RSM
Sentencing Memorandum - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970